**FOLEY & LARDNER LLP**
Kelsey Finn (CA Bar No. 334670)
kfinn@foley.com
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
(213) 972.4500

Charles Throckmorton (*pro hac vice*)
Holli Gray (*pro hac vice*)
charles.throckmorton@foley.com
holli.gray@foley.com
2 S Biscayne Blvd, Suite 1900
Miami, FL 33131
(305) 482-8400

John Korba (*pro hac vice)*
jack.korba@foley.com
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 295-4110

*Attorneys for Defendant Foris DAX, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNG MIN LEE, <br><br> Plaintiff, <br><br> vs. <br><br> FORIS DAX, INC. d/b/a CRYPTO.COM, <br><br> Defendants. | Case No.: 3-24-cv-06194-WHO <br><br> Assigned to the Honorable William H. Orrick, Courtroom 2 <br><br> **DEFENDANT FORIS DAX, INC.'S NOTICE OF MOTION; MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Date:  May 20, 2026 <br> Time:  2:00 p.m. <br> Judge:  William H. Orrick <br> Place:  450 Golden Gate Ave. <br>  San Francisco, CA 94102 <br><br> Complaint filed: July 1, 2024 <br> Removal filed: August 30, 2024 <br> Second Amended Complaint filed: May 23, 2025 <br> Pretrial Conference: December 21, 2026 <br> Trial Date: January 25, 2027 |

*Left margin (rotated):* United States District Court / Northern District of California

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 20, 2026, at 2:00 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable William H. Orrick, located in the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Foris DAX, Inc. d/b/a Crypto.com ("Crypto.com") will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 12(c) to dismiss with prejudice the remaining claim asserted against Crypto.com in these proceedings by Plaintiff Jung Min Lee ("Plaintiff").

The Court should dismiss Plaintiff's remaining claim against Crypto.com for lack of statutory standing and failure to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion, the enclosed Memorandum of Points and Authorities, the Declaration of John Korba, all of the pleadings, filings, and records in these proceedings, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED: April 8, 2026                    **FOLEY & LARDNER LLP**
                                        Charles Throckmorton
                                        John Korba
                                        Holli Gray
                                        Kelsey C Finn


                                        _/s/ Kelsey Finn_____
                                        Attorneys for Defendant, Foris DAX, Inc., d/b/a
                                        Crypto.com

DEFENDANT FORIS DAX, INC.'S NOTICE OF MOTION;
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO
ii

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................. 1

**RELEVANT FACTUAL BACKGROUND** ..................................................................... 2

    A.  Patz Is Introduced to and Develops a Personal Relationship with the Scammers off Crypto.com's Platform, and the Scammers Persuade Patz to Create a Crypto.com Account ....................................................................................................... 2

    B.  Patz Withdrew Funds from First Republic Bank, Representing That the Transactions Were Investments ............................................................................................................ 3

    C.  Crypto.com Performed Due Diligence and Asked Patz Questions About His Intended Use of the Crypto.com App ...................................................................................... 3

**RELEVANT PROCEDURAL BACKGROUND** ........................................................... 4

**LEGAL STANDARDS** ....................................................................................................... 4

    I.  Motion for Judgment on the Pleadings Under Rule 12(c) .......................................... 4

    II.  California's Unfair Competition Law ("UCL") ......................................................... 5

    III.  The Bank Secrecy Act ("BSA") ............................................................................... 6

**ARGUMENT** ........................................................................................................................ 8

    I.  Plaintiff Fails to Allege a Sufficient Causal Connection for UCL Purposes ............................ 8

    II.  Crypto.com's Conduct was Not a Substantial Factor in Plaintiff's Harm ............................ 13

    III.  The Plaintiff's Husband and Unknown Suspects Committed Superseding Acts in the Causal Chain ..................................................................................................... 15

**CONCLUSION** ................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 6

*Barnum Timber Co. v. U.S. E.P.A.*,
  633 F.3d 894 (9th Cir. 2011) ................................................................................................. 8

*Bittner v. United States*,
  598 U.S. 85 (2023) ................................................................................................................. 7

*Bockrath v. Aldrich Chem. Co., Inc.*,
  21 Cal. 4th 71 (1999) ........................................................................................................... 13

*California Bankers Ass'n v. Shultz*,
  416 U.S. 21 (1974) ................................................................................................................. 8

*Cel-Tech Comms. Inc. v. L.A. Cellular Tel. Co.,*
  (20 Cal. 4th 163 (1999) ..................................................................................................... 5, 6

*Cousins v. Lockyer,*
  568 F.3d 1063 (9th Cir. 2009) ............................................................................................... 5

*Cox v. Adm'r U.S. Steel & Carnegie,*
  17 F.3d 1386 (11th Cir. 1994) ............................................................................................. 14

*Daro v. Superior Court,*
  151 Cal. App. 4th 1079 (2007) .............................................................................................. 9

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ........................................................................................... 5, 6

*DeCarlo v. Costco Wholesale Corp.*,
  733 F. Appx. 398 (9th Cir. 2018) .......................................................................................... 9

*Diva Limousine, Ltd. v. Uber Techs., Inc.,*
  392 F. Supp. 3d 1074 (N.D. Cal. 2019) ........................................................................... 8, 13

*Dworkin v. Hustler Mag., Inc.,*
  867 F.2d 1188 (9th Cir. 1989) ............................................................................................... 5

*Empire Merchants, LLC v. Reliable Churchill LLP*,
  No. 16 Civ 5226, 2017 WL 5559030 (E.D.N.Y Mar. 16, 2017) .................................... 10, 11

*Exxon Co., U.S.A. v. Sofec, Inc.*,
   517 U.S. 830 (1996) ................................................................................................ 15

*In re Actimmune Mktg. Litig.*,
   Case No. 09-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) .................................. 6

*In re Apple iPhone Antitrust Litigation*,
   846 F. 3d 313 (9th Cir. 2017) .................................................................................... 5

*Kahn v. E. Side Union High Sch. Dist.*,
   31 Cal. 4th 990 (Cal. 2003) ....................................................................................... 16

*Lewis v. City & Country of San Francisco*,
   No. C 11-5273 PJH, 2012 WL 909801 (N.D. Cal. March 16, 2012) .......................................... 5

*Licht v. Binance Holdings Limited* ,
   No. 24-10447-NMG, 2025 WL 625303 (D. Mass. Feb. 5, 2025) ............................................... 11

*Lusk v. Kellogg*,
   2011 WL 13225140 (C.D. Cal. Aug. 10, 2011) ................................................................. 7

*Marlin v. Moody Nat'l Bank, N.A.*,
   No. CIV.A. H-04-4443, 2006 WL 2382325 (S.D. Tex. Aug. 16, 2006) ...................................... 7

*Martinez Colon v. Santander Nat. Bank*,
   4 F. Supp. 2d 53 (D.P.R. 1998) ................................................................................... 7

*Mitchell v. Gonzales,*
   54 Cal. 3d 1041 (1991) ............................................................................................ 13

*Moller v. County of San Bernandino*,
   792 F. Supp. 3d 1038 (C.D. Cal. 2024) ........................................................................ 16

*Navy Fed. Credit Union v. Lentz*,
   78 Va. App. 250, 890 S.E.2d 827 (2023) ...................................................................... 8

*Nola M. v. Univ. of S. Cal.*,
   16 Cal. App. 4th 421 (1993) ..................................................................................... 13

*O'Connor v. Uber Techs., Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) .......................................................................... 5

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
   298 F.3d 768 (9th Cir. 2002) ................................................................................. 9, 14

*Pacific Int'l Vegetable Mktg., Inc. v. Nationwide Agribusiness Ins. Co.*,
   694 F. Supp. 3d 1185 (N.D. Cal. 2023) ........................................................................ 5

DEFENDANT FORIS DAX, INC.'S NOTICE OF MOTION;
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

*Perez v. VAS S.p.A.*,
    188 Cal. App. 4th 658 (2010).................................................................................................... 16

*Premo v. Grigg*,
    237 Cal. App. 2d 192 (1965).................................................................................................... 16

*Reca v. Flashdot Limited*,
    No. 24-cv-6316-GHW, 2026 WL 82702 (S.D.N.Y. Jan. 12, 2026)............................ 9, 10, 11, 14

*Res-Care Inc. v. Roto-Rooter Servs. Co.*,
    753 F. Supp. 2d 970 (N.D. Cal. 2010) ...................................................................................... 16

*Saelzler v. Advanced Grp.* 400,
    25 Cal. 4th 763 (2001)..................................................................................................... 13, 14, 15

*Smarigisso v. Air & Liquid Sys. Corp.*,
    750 F. Supp. 3d 1046 (N.D. Cal. 2024) ...................................................................................... 15

*Troyk v. Farmers Grp., Inc.*,
    171 Cal. App. 4th 1305 (2009)................................................................................................... 13

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
    233 Cal. App. 4th 1321 (2015).............................................................................................. 8, 9

*U.S. v. Parks Place Associates, Ltd.*,
    563 F.3d 907 (9th Cir. 2009)....................................................................................................... 5

*Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*,
    No. 19-CV-02778-TSH, 2019 WL 3503109 (N.D. Cal. Aug. 1, 2019)....................................... 7

*Vicon Fiber Optics Corp. v. Scrivo*,
    201 F. Supp. 2d. 216 (S.D.N.Y. 2002).................................................................................... 10

**Statutes**

12 U.S.C. § 1829b(a)(2) ................................................................................................................. 8

12 U.S.C. § 1951 ............................................................................................................................ 6

18 U.S.C. § 1962(c)...................................................................................................................... 10

31 U.S.C. § 5311 ....................................................................................................................... 6, 7

Cal. Bus. & Prof. Code § 17200...................................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(c)............................................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 5

**Regulations**

31 C.F.R. Chapter X ............................................................................................................ 7

31 C.F.R. § 1022.210(a) ...................................................................................................... 7

**Other Authorities**

Rest. 2d Torts, § 431 ......................................................................................................... 14

**INTRODUCTION**

Crypto.com moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) as to the sole remaining claim in this case. As made clear in the Court's September 5, 2025 Dismissal Order [the "Dismissal Order," DE No. 115], which dismissed nearly every claim brought by Plaintiff with prejudice, the only surviving claim in this case is an Unfair Competition Law ("UCL") claim predicated on allegedly unlawful violations of the Bank Secrecy Act ("BSA"). The only questions left to resolve in this case are (1) whether Crypto.com engaged in an unlawful business practice by violating the BSA willfully or negligently, and (2) if so, whether Plaintiff directly suffered harm as a result of the purported BSA violations. As pled, Plaintiff cannot satisfy the second prong for the following reasons:

1.      There is a legally insufficient causal connection between Plaintiff's injury and Crypto.com's alleged unlawful conduct as Plaintiff's alleged loss resulted from her husband's voluntary conduct and the independent fraud of unknown scammers rather than from Crypto.com's alleged noncompliance with the BSA. Plaintiff's injury would have been exactly the same irrespective of Crypto.com's BSA compliance, thereby breaking the causal connection.

2.      Even assuming a sufficient causal connection was pled, Plaintiff's theory relies on mere speculation that Crypto.com's BSA compliance would have prevented Plaintiff's injury, and tenuous arguments which are insufficient as a matter of law to establish that Crypto.com's conduct was a substantial factor in causing Plaintiff's alleged loss.

3.      The intervening, superseding acts of Plaintiff's husband (who ignored Crypto.com's inquiries and warnings) and the scammers' off-platform misconduct break any causal connection between Crypto.com's alleged non-compliance and Plaintiff's injury, defeating UCL causation as a matter of law.

Because Plaintiff's Second Amended Complaint cannot sufficiently allege that Crypto.com's alleged failures to meet its statutory and regulatory obligations surrounding its anti-money laundering ("AML") program caused Plaintiff's injuries for purposes of the UCL, her UCL claim should be dismissed with prejudice.

DEFENDANT FORIS DAX, INC.'S NOTICE OF MOTION; MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

## RELEVANT FACTUAL BACKGROUND

Plaintiff is married to Donald Patz ("Patz"), who is not a plaintiff in this case. *See* SAC at ¶ 18; Order Granting Defendants' First Motion to Dismiss [DE No. 79] at 2. As summarized in the Court's Dismissal Order, Plaintiff's Second Amended Complaint ("SAC") alleges that Crypto.com "enabled unknown internet cryptocurrency scammers to take advantage of her 'elderly' husband, Patz, who is over the age of 65, by soliciting him to withdraw fiat currency that was their community property from various accounts that he held at First Republic Bank and to invest those funds in fraudulent cryptocurrency schemes, ultimately resulting in close to $1 million in losses." *See* DE No. 115 at 1.

**A. Patz Was Introduced to and Developed a Personal Relationship with the Scammers off Crypto.com's Platform, and the Scammers Persuaded Patz to Create a Crypto.com Account.**

"In January 2023, 'scammers' contacted Patz via Instagram and began chatting with him on the online messaging app 'WhatsApp' to discuss what they described as an 'investment opportunity.'" Order Granting Defendants' Motion to Dismiss [DE No. 79] at 2. According to the SAC, these communications occurred exclusively through third-party social media and messaging applications and did not involve Crypto.com in any respect. *See* SAC at ¶¶ 105-109.

The SAC alleges that, during these off-platform communications, the scammers (purporting to be a single individual) identified themselves as "Alisa (Weyna) Chen," represented that she had financial expertise, and sent Patz purported financial information and images designed to portray successful investment activity and substantial returns. *See* SAC at ¶¶ 109-111. As part of this course of conduct, the scammer allegedly began to cultivate a personal relationship with Patz, including by urging him to fire his existing financial advisor and instead "follow [her] instructions." *See id.* at ¶ 114. The scammer then "guided Mr. Patz to setting up an account at Crypto.com" and "persistently" followed up with Patz regarding whether "Crypto.com had finished verifying his account[.]" *Id.* at ¶¶ 112, 115.

**B. Patz Withdrew Funds from First Republic Bank, Representing That the Transactions Were Investments.**

After being persuaded by the scammer to pursue the purported investment opportunity, Patz withdrew funds from his accounts held at First Republic Bank and transferred those funds to his Crypto.com account. *Id.* at ¶¶ 124-127 Patz represented to First Republic Bank personnel that he was withdrawing and transferring funds in order to "invest" in cryptocurrency. *Id.* at ¶¶ 153–154. The SAC further alleges that Patz swept funds from various accounts, including retirement and investment accounts, to facilitate these transfers. *See* SAC at ¶ 155.

The SAC does not allege that Patz disclosed to any First Republic representative the existence of the scammer, the nature of the off-platform communications, or any concern that the transactions were fraudulent. Nor does the SAC allege that Patz expressed uncertainty, confusion, or suspicion regarding the legitimacy of the transactions at the time the funds were withdrawn. Even more, the SAC does not allege that Crypto.com was involved in, aware of, or had any role in Patz's communications with First Republic Bank prior to the withdrawal and transfer of his funds. Instead, the pleadings reflect that Patz affirmatively characterized the transactions as investment-related. *Id.* at ¶¶ 157-159.

**C. Crypto.com Performed Due Diligence and Asked Patz Questions About His Intended Use of the Crypto.com App.**

Once Patz began using his Crypto.com account, as the SAC acknowledges, Crypto.com did not simply process all of Patz's transactions without any due diligence or further inquiry. *See id.* at ¶¶ 185-189. Instead, when Patz attempted to add a new external withdrawal wallet address to his Crypto.com account, Crypto.com contacted Patz and asked him a series of questions in connection with that request, including but not limited to questions regarding Patz's account activity, the purpose of his transactions, and whether he was working with professional investment services. *Id.*; *see also* Crypto.com's Motion to Dismiss Plaintiff's First Amended Complaint [DE No. 67] at 13-14; Declaration of Brandon Neff in Support of Crypto.com's Motion to Dismiss Plaintiff's First Amended Complaint [DE No. 67-2]; Crypto.com's Reply In Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint [DE No. 109] at 5.

DEFENDANT FORIS DAX, INC.'S NOTICE OF MOTION;
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

3

During this interaction, Patz told Crypto.com, among other things, that he created his Crypto.com account "both to learn and to invest in cryptocurrency," that he was "planning a diversified cryptocurrency portfolio," that he keeps up to date on crypto via "multiple sources of news media," and that he has "friends who discuss opportunities together." *See* Crypto.com's Motion to Dismiss Plaintiff's First Amended Complaint [DE No. 67] at 14. Throughout the course of these communications, Patz did not identify the recipient, did not express confusion about the transactions, and did not suggest that Crypto.com's systems had malfunctioned. Instead, Patz specifically told Crypto.com that "these are my funds and I don't feel an obligation to divulge my personal goals." *Id.* These communications are reflected in the record, including as set forth in full in Exhibit A to the Declaration of Brandon Neff in Support of Crypto.com's Motion to Dismiss Plaintiff's First Amended Complaint [DE No. 67-2].

## RELEVANT PROCEDURAL BACKGROUND

On September 5, 2025, the Court Granted in Part and Denied in Part Crypto.com's Motion to Dismiss. DE No. 115. The only claim not dismissed by the Court's Order was Plaintiff's claim alleging a violation of the UCL based on violations of the BSA. *Id.* In denying Crypto.com's Motion to Dismiss as to this claim, the Court rejected Crypto.com's reliance argument, noting that Plaintiff's BSA theory did "not rest on any misrepresentations or consumer deception, so reliance is not necessarily required." *Id.* at 17. The Court did not, however, address whether Plaintiff sufficiently demonstrated a causal connection between her injury in fact and the alleged unlawful conduct under the BSA.

Following the Court's Order on Crypto.com's Motion to Dismiss, a Pretrial Conference was set for December 21, 2026, and a Bench Trial was set for January 25, 2027. On October 20, 2025, Crypto.com filed an Answer to Plaintiff's Second Amended Complaint. As such, pleadings in this case are now closed for purposes of Fed. R. Civ. P. 12(c).

## LEGAL STANDARDS

### I.   Motion for Judgment on the Pleadings Under Rule 12(c)

Pursuant to Rule 12(c), a party may move for judgment on the pleadings after the

pleadings are closed – but must do so early enough so as not to delay trial.  Fed. R. Civ. P. 12(c).[1] A motion for judgment on the pleadings challenges the sufficiency of the opposing party's pleadings and operates like a motion to dismiss under Rule 12(b)(6) in that the same standard of review applies as the motions are "functionally identical."  *Pacific Int'l Vegetable Mktg., Inc. v. Nationwide Agribusiness Ins. Co.*, 694 F. Supp. 3d 1185, 1189 (N.D. Cal. 2023) (quoting *Dworkin v. Hustler Mag., Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989)).  Accordingly, in considering such a motion a court must take all allegations of material facts as true and construe them in a light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid" dismissal. *See O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 995 (N.D. Cal. 2014) (quoting *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009)).  While "a complaint need not contain detailed factual allegations…it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*; *see also Lewis v. City & County of San Francisco*, No. C 11-5273 PJH, 2012 WL 909801 at *1 (N.D. Cal. March 16, 2012) (stating that to survive a Rule 12(c) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face.").  A defendant may file a Rule 12(c) motion asserting a failure-to-state-a-claim defense even where it has previously filed a Rule 12(b)(6) motion, so long as the issue raised in the Rule 12(c) motion was not previously raised and rejected. *See, e.g., In re Apple iPhone Antitrust Litig.*, 846 F. 3d 313, 318 (9th Cir. 2017); *see also U.S. v. Parks Place Assocs., Ltd.*, 563 F.3d 907, 925 (9th Cir. 2009) ("For a prior ruling to become law of the case as to a particular issue, that issue must have been decided explicitly or by necessary implication in the previous disposition.") (internal quotations omitted).

## II.    California's Unfair Competition Law ("UCL")

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") prohibits "unfair competition," which is broadly defined to include "three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (quoting *Cel-Tech Comms. Inc. v. L.A. Cellular Tel.*

[1] The trial in this matter is scheduled for January of 2027.

*Co.,* 20 Cal. 4th 163, 182 (1999)). To be "unlawful" under the UCL, the defendant's actions or practice must violate another "borrowed" law. *Id.* (citing *Cel-Tech*, 20 Cal. 4th 163 at 179-80) ("[S]ection 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable")). In the context of an unlawful-prong claim, a plaintiff must establish that a defendant engaged in unlawful conduct, i.e., violated a federal, state or municipal statute, ordinance or regulation, and that as a result of the defendant's unlawful conduct, the plaintiff suffered an injury in fact and has lost money or property. *In re Actimmune Mktg. Litig.*, Case No. 09-02376 MHP, 2010 WL 3463491, at \*6 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 Fed. App'x. 651 (9th Cir. 2011).

Establishing that a defendant violated the law only accomplishes half of a plaintiff's burden for a UCL unlawful-prong claim, and plaintiffs are then required to prove they were injured "as a result of" defendant's law-violating conduct. *Id.* at 7. To adequately state a claim under this prong, plaintiffs must allege a plausible entitlement to relief, including a *plausible* causal chain of injury. *Id.* at 9 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added)).

### III.    The Bank Secrecy Act ("BSA")

The Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311, et seq. and 12 U.S.C. § 1951, et seq., authorizes the United States Department of Treasury ("Treasury") to impose reporting and other requirements on financial institutions and other businesses to help detect and prevent money laundering. In relevant part, it is the purpose of the BSA to–

(1) require certain reports or records that are highly useful in-

   (A) criminal, tax, or regulatory investigations, risk assessments, or proceedings; or

   (B) intelligence or counterintelligence activities, including analysis, to protect against terrorism;

(2) prevent the laundering of money and the financing of terrorism through the establishment by financial institutions of reasonably designed risk-based programs to combat money launder and the financing of terrorism;

(3) facilitate the tracking of money that has been sourced through criminal activity or is intended to promote criminal or terrorist activity; …

31 U.S.C. § 5311.  31 C.F.R. Chapter X sets forth regulations issued by Treasury's Financial Crimes Enforcement Network ("FinCEN") enforcing the BSA.  Under these regulations, money services businesses are required to develop, implement, and maintain an effective anti-money laundering ("AML") program.  31 C.F.R. § 1022.210(a).  An effective AML program is one that is reasonably designed to prevent the money services business from being used to facilitate money laundering and the financing of terrorist activities.  *Id.*  Nowhere in the BSA's statutory declaration of purpose or regulations requiring effective AML programs is it indicated that the BSA and its ensuing regulations are designed to prevent theft of any kind.

Plaintiff's theory improperly attempts to repurpose the BSA as a consumer-protection or anti-theft statute, when the BSA is not designed to prevent fraud losses, nor does it require financial institutions to "roam through its customers looking for crooks and terrorists." *See, e.g.*, *Marlin v. Moody Nat'l Bank, N.A.*, No. CIV.A. H-04-4443, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006) (holding that obligations under the BSA run *"to the government rather than some remote victim"* and that financial institutions are not "guarantors of the integrity of the deals of their customers."), *aff'd*, 248 Fed. App'x 534 (5th Cir. 2007); *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-CV-02778-TSH, 2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019) ("[T]here can be no duty of care arising out of the BSA's monitoring requirements.") (citing *Lusk v. Kellogg*, 2011 WL 13225140, at *6 (C.D. Cal. Aug. 10, 2011) ("The Bank Secrecy Act creates neither a private right action nor any parallel duty to a bank customer.")); *see also Bittner v. United States*, 598 U.S. 85, 98 (2023) ("The relevant legal duty the BSA establishes is the duty to file certain reports…. Congress has declared that the BSA's 'purpose' is 'to require' certain 'reports' or 'records' that may assist the government in everything from criminal and tax to intelligence and counterintelligence investigations"); *Martinez Colon v. Santander Nat. Bank*, 4 F. Supp. 2d 53, 57 (D.P.R. 1998) ("Congress' purpose in enacting the statute was to ensure that certain business records assist government agencies in conducting criminal, tax, or regulatory

investigations."); *Navy Fed. Credit Union v. Lentz*, 78 Va. App. 250, 256, 890 S.E.2d 827, 830 (2023) ("The express purpose of the BSA is to require the maintenance of records, and the making of certain reports, which have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings.") (Cleaned up) (citing *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 26 (1974) (quoting 12 U.S.C. § 1829b(a)(2))).

### ARGUMENT

Because the BSA is not intended to prevent the type of harm that allegedly befell Plaintiff, her Complaint contains no plausible allegations that Crypto.com's alleged failure to implement or maintain an effective AML program caused her injury. Plaintiff's sole remaining claim does not allege that Crypto.com committed or in any way participated in the theft of Plaintiff's husband's cryptocurrency. Plaintiff's only remaining theory of causation is that Crypto.com's failure to abide by a regulatory scheme meant to prevent the facilitation of money laundering led to her harm. SAC at ¶¶ 373-403. Even viewing the facts in a light most favorable to Plaintiff, there is simply no basis to draw a sufficient causal link between the harms perpetrated by unknown malicious third parties and Crypto.com's alleged regulatory compliance failures. In addition, Crypto.com's actions or inactions cannot be said to be a substantial factor in Plaintiff's monetary losses as Crypto.com's alleged BSA deficiencies only have a remote and trivial nexus to Plaintiff's injury, and Plaintiff's theory that Crypto.com's compliance with the BSA could have prevented Plaintiff's losses is pure conjecture. Finally, superseding acts by third parties unrelated to Crypto.com sever the causal link between Crypto.com's alleged unlawful activity and Plaintiff's injuries.

### I.     Plaintiff Fails to Allege a Sufficient Causal Connection for UCL Purposes

To establish a UCL claim, a plaintiff must demonstrate a causal connection between the injury and the conduct complained of. *Diva Limousine, Ltd. v. Uber Techs., Inc.,* 392 F. Supp. 3d 1074, 1092 (N.D. Cal. 2019) (citing *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 897 (9th Cir. 2011)); *see also Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, 233 Cal. App. 4th 1321, 1333 (.2015) ("In order to pursue a UCL claim, the plaintiff must show that the practices that it

DEFENDANT FORIS DAX, INC.'S NOTICE OF MOTION;
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

characterizes as unlawful caused it to suffer an actual economic injury."). A plaintiff must allege both a violation of the [predicate] statute and "a causal connection between the harm suffered and the unlawful business activity." *Hall v. SeaWorld Ent., Inc.*, 747 App'x. 449, 452 (9th Cir. 2018) (affirming dismissal of UCL unlawful claim where the complaint failed to allege that the violation of the predicate statute "caused or resulted in the injury Plaintiffs allege here."); *see also DeCarlo v. Costco Wholesale Corp.*, 733 F. Appx. 398 (Mem), 399 (9th Cir. 2018) ("The district court correctly concluded that [plaintiff] lacks Article III standing with respect to his claims under the 'unlawful' prong of [the UCL] because the harm that [plaintiff] alleges is not fairly traceable to the mere fact that [defendants] allegedly violated certain provisions of California law regulating their business relationships."). In *Hall*, the Ninth Circuit rejected plaintiff's argument that "had they known about the alleged [violation], they would *not* have purchased the tickets they cite as the source of their economic injury." *Id.* Noting that the alleged violation "could be said to have a causal effect on Plaintiff's *behavior*," the Ninth Circuit held that plaintiffs lacked a "casual connection between the claimed legal violation and Plaintiffs' economic injury," and therefore, "Plaintiffs cannot state a UCL claim based on SeaWorld's alleged violation of [the predicate statute]." *Id.* (emphasis added).

As the Ninth Circuit held in the RICO liability context, laundering of funds to avoid law enforcement detection is not the direct and proximate cause of injury to the victim of a robbery; rather, the initial theft is. *See Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 774 (9th Cir. 2002). In addition, California courts have explained that in a UCL action based on an unlawful business practice, the "causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.'" *Two Jinn, Inc.*, 233 Cal. App. at 1332 (citing *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007)).

Recent cases dismissed at the pleading stages based on lack of causation, with fact patterns highly similar to those here, are instructive, including decisions from the Southern District of New York and the District of Massachusetts. In *Reca v. Flashdot Limited*, the plaintiffs alleged that unknown hackers collectively stole millions of dollars worth of cryptocurrency from their digital wallets. *See* Case No. 1:24-cv-6316-GHW, 2026 WL 82702, at *1 (S.D.N.Y. Jan. 12,

DEFENDANT FORIS DAX, INC.'S NOTICE OF MOTION; MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

9

2026). Instead of filing suit against the unknown thieves, the *Reca* plaintiffs asserted violations of 18 U.S.C. § 1962(c), or the Racketeer Influenced and Corrupt Organizations ("RICO") Act, and conspiracy to violate the RICO Act, against cryptocurrency exchange KuCoin and Chainalysis, Inc. ("Chainalysis"), a software company retained by KuCoin to assist in identifying and purportedly blocking bad actors from using KuCoin to launder cryptocurrency and engage in fraudulent transactions. *Id.* With regard to KuCoin, the plaintiffs' RICO claim was partially predicated on KuCoin's alleged violation of the BSA by failing to implement adequate AML procedures. *Id.* at *1-2. Based on KuCoin's alleged failure to prevent money laundering, the *Reca* plaintiffs argued they were injured because they lost the ability to track and potentially recover their stolen cryptocurrency. *Id.* at *1.

In granting both KuCoin's and Chainalysis' motions to dismiss, the court agreed with the magistrate judge's report and recommendation ("R&R") concluding that the plaintiffs failed to adequately allege proximate causation and but-for causation. *Id.* at *7-9. With regard to proximate causation: (1) plaintiffs' injuries would not exist absent the bad actors' initial theft of their cryptocurrency; (2) their theory would require that the court look "beyond the first step in the causal chain"; and (3) their alleged injuries "do not necessarily follow from Defendant's alleged predicate acts." *Id.* at *7. The *Reca* court pointed out that the plaintiffs' asserted injury would have occurred regardless of KuCoin's Know Your Customer ("KYC") and AML practices. *Id.* at 8. The R&R noted that courts in the Second Circuit "have held that concealment of the underlying illegal activity cannot be the proximate cause of a plaintiff's injury because the plaintiff would have suffered the same injury from the underlying illegal activity regardless whether the concealment occurred." *Id.* at *7 (quoting *Empire Merchants, LLC v. Reliable Churchill LLP*, No. 16 Civ. 5226, 2017 WL 5559030 (E.D.N.Y Mar. 16, 2017), *aff'd* 902 F.3d 112 (2d Cir. 2018); *see also Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d. 216, 219 (S.D.N.Y. 2002) ("A predicate act does not proximately cause an injury if it merely furthers, facilitates, permits or conceals an injury that happened or could have happened independently of the act."). Notably, as is the case here, the *Reca* plaintiffs did not allege that any defendant could have prevented the theft of cryptocurrency, only that the defendants could have prevented the

laundering of stolen cryptocurrency at KuCoin. *Reca*, 2026 WL 82702, at *7. Similarly, as for but-for causation, the court held the magistrate judge's R&R was correct in concluding that the but-for cause of the *Reca* plaintiffs' alleged loss of the ability to track their cryptocurrency was the bad actors' theft in the first instance, and not the defendants' actions or inactions. *Id.* at *8-9.

In *Licht v. Binance Holdings Limited*, the plaintiffs similarly alleged that unknown third parties stole their cryptocurrency by fraudulently inducing them to enter fake investment scams. *See* Civil Action No. 24-10447-NMG, 2025 WL 625303, at *1 (D. Mass. Feb. 5, 2025). The *Licht* plaintiffs also alleged a RICO claim against cryptocurrency exchange Binance Holdings Limited ("Binance"), under the theory that the defendants engaged in a pattern of racketeering activity by violating the BSA. *Id.* at *1, *20. Under the *Licht* plaintiffs' causation theory, if a cryptocurrency exchange flags transactions as suspicious, freezes the scammers' accounts, and reports the suspicious transactions to FinCEN, then the scammers are prevented from cashing out, and law enforcement can seize the cryptocurrency for return to the victims. *Id.* at *17. However, if a cryptocurrency exchange willfully fails to comply with the BSA and instead allows scammers to use the exchange as a laundering facility and cash-out point, then scammers are not prevented from cashing out, leaving the victims unable to recover. *Id.*

In rejecting the *Licht* plaintiffs' causation theory and granting the defendants' motion to dismiss, the court pointed to the absence of non-conclusory, non-speculative allegations in support of a plausible conclusion that the scammers' transactions in these schemes would have been flagged as suspicious by Binance and their accounts would have been frozen and the suspicious transactions reported to FinCEN. *Id.* at *38. The cause of the *Licht* plaintiffs' injury "was a set of actions ([fraudulent investment] pig butchering schemes) entirely distinct from the operation of Binance as an unlicensed, unregistered MTB (defrauding the United States), and even entirely distinct from putative money laundering." *Id.* at *39. That Binance failed to comply with United States laws and therefore offered a more convenient "cash out" point did not mean that the scammers necessarily would target the plaintiffs, and plaintiffs' inability to recover the stolen cryptocurrency, because it was converted to fiat currency, may have resulted from other, independent factors. *Id.*; *cf. Empire Merchants,* 902 F.3d at 142 (holding that Empire's

theory of causation required the Court to go beyond the first step in the causal chain).

The logic relied on to dismiss the BSA-related claims in *Reca* and *Licht* applies equally to Plaintiff's theory of causation here.  In her SAC, Plaintiff alleges that Crypto.com's failure to implement an effective AML program and failure to detect and prevent its financial systems from being used to facilitate money laundering resulted in BSA and AML violations, and caused the harms in this case. SAC at ¶¶ 381, 403.  However, Plaintiff's theory requires the Court to go beyond not just the first step in the causal chain, but the second step as well.  First, it was not Crypto.com that sent the cryptocurrency to the unknown scammers at issue, it was Plaintiff's husband Patz himself.  If anything, Crypto.com attempted to intervene and conduct due diligence on the transactions, but was met with resistance by Patz as alleged by Plaintiff herself.  SAC at ¶¶ 185-188.  Second, notwithstanding Patz's voluntary actions, it was the malicious and unknown bad actors that induced Patz to withdraw fiat currency and send the cryptocurrency under false pretenses.  As such, it was the unknown actors, just like in *Reca* and *Licht* that committed the ultimate theft, not Crypto.com.  As in *Oki Semiconductor*, the initial theft was the direct cause of Plaintiff's injuries, not the subsequent alleged money laundering, and certainly not the facilitation of money laundering through an allegedly noncompliant program, which further strains any plausible causal connection between the theft and Crypto.com's alleged actions here.

In addition, the causal connection between Crypto.com's alleged regulatory violations and Plaintiff's injuries is clearly broken, as Plaintiff would have suffered the same harm whether or not Crypto.com complied with the law.  Plaintiff's SAC is completely devoid of any non-conclusory or non-speculative allegations that Plaintiff's economic injury would have been prevented by Crypto.com's compliance with the BSA.  Plaintiff's SAC fails to allege even the speculative remedial measures that could have been employed in *Licht*, and does not plausibly suggest how compliance with the BSA would have prevented the scammers from enticing Patz to send them cryptocurrency.  What is clear, however, is that Plaintiff would have suffered the same injury regardless of whether effective AML measures were employed.  Proactive theft policing is not the purpose of the BSA as explained throughout relevant the caselaw cited above. Crypto.com's obligation under the BSA does not extend to affirmatively investigating bad actors

DEFENDANT FORIS DAX, INC.'S NOTICE OF MOTION;
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

12

utilizing its platform in an effort to prevent harm to its customers.  As the BSA only pertains to and requires effective AML measures, Plaintiff cannot reasonably allege that Plaintiff's injuries would have been prevented by Crypto.com's BSA compliance. The causal connection for purposes of Plaintiff's UCL claim is thus broken, and the remaining claim should be dismissed.

## II.   Crypto.com's Conduct was Not a Substantial Factor in Plaintiff's Harm

Even assuming a causal link between Crypto.com's alleged AML deficiencies and Plaintiff's economic injury, Crypto.com was not a "substantial factor" in Plaintiff's harm.  The California Court of Appeal has suggested that a "substantial factor" standard of causation can suffice for UCL standing. *See Diva Limousine, Ltd. v. Uber Techs.*, 392 F. Supp. 3d 1074, 1092-93 (N.D. Cal. 2019) (citing *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1350, n.33 (2009)).  As set forth in *Troyk*, "a substantial factor in causing harm is a factor that a reasonable person would considered to have contributed to the harm.  It must be more than a remote or trivial factor." *Id.*  A force which plays only an "infinitesimal" or "theoretical" part in bringing about injury, damage, or loss is not a substantial factor.  *Bockrath v. Aldrich Chem. Co., Inc.*, 21 Cal. 4th 71, 78-79 (1999).  A mere possibility of causation or one that rests on pure speculation or conjecture is not enough.  *See Saelzler v. Advanced Grp.* 400, 25 Cal. 4th 763, 777 (2001) (citing Prosser & Keeton, Torts (5th ed. 1984) § 41, p. 269, fns. omitted).

In *Saelzler*, an analogous situation was considered where the plaintiff was violently assaulted in an apartment complex by unknown assailants while she was delivering a package as part of her job working for Federal Express.  25 Cal. 4th at 769.  The plaintiff brought suit against the owners of the apartment complex, alleging that the defendants knew dangerous persons frequented their premises, yet nonetheless failed to maintain the premises in a safe condition, failed to provide adequate security, and failed to warn others of the unsafe conditions.  *Id.*  On appeal, the court solely considered the issue of causation and whether the defendants' possible breach of duty was a substantial factor in causing plaintiff's injuries.  *Id.* at 772.  Ultimately, the court held that the plaintiff could not show that the defendants' failure to provide increased daytime security at each entrance gate or functioning locks was a substantial factor in causing her injuries.  *Id.* at 776 (citing *Nola M. v. Univ. of S. Cal.*, 16 Cal. App. 4th 421, 427 (1993); *Mitchell*

*v. Gonzales,* 54 Cal. 3d 1041, 1052-1054 (1991); Rest. 2d Torts, § 431, subd. (a).).  The evidence merely showed the speculative possibility that additional daytime security guards and/or functioning gates might have prevented the assault.  *Saelzler*, 25 Cal. 4th at 781.  No matter how inexcusable a defendant's act or omission might appear, the plaintiff must nonetheless show that the act or omission caused, or substantially contributed to, her injury.  *Id.* at 780.  Given the speculative nature of this causation theory, the plaintiff could not demonstrate that defendants' omissions were a substantial factor in causing her injuries.  *Id.*

Likewise, in *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, the court held that a money launderer's role in a criminal conspiracy, while important, was not a "substantial factor in the sequence of responsible causation."  298 F.3d 768, 774 (9th Cir. 2002) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994)).  In *Oki Semiconductor,* the bad actor established sham bank accounts and facilitated numerous transactions to convert and transfer the co-mingled funds in order to avoid detection by law enforcement.  *Oki Semiconductor*, 298 F.3d at 774.  While there was a tenuous argument that the conspirators may not have undertaken to steal the goods in question in the first place, the court found this argument too speculative.  *Id.*  Only after the theft occurred and the stolen goods were sold could the proceeds be laundered, and thus the bad actor's conduct did not sufficiently cause the plaintiff's loss.  Similarly, in *Sofia Reca*, the court found that the magistrate judge's R&R was correct in reasoning that an indeterminate number of events and circumstances could have plausibly contributed to the plaintiffs' loss of the ability to track their cryptocurrency, and that the "but-for" cause of the plaintiffs' injury was the bad actors' theft in the first instance.  *See* No. 1:24-cv-6316-GHW, 2026 WL 82702, at *7-9 (S.D.N.Y. Jan. 12, 2026).

Here, the actions or inactions of Crypto.com are far too remote and trivial to be considered a substantial factor in Plaintiff's injuries.  Indeed, Plaintiff's logic relies on the theoretical assumption that the losses would have been prevented or mitigated had Crypto.com complied with the BSA and implemented adequate AML policies and procedures.  Just like in *Saelzler*, the speculative possibility that increased security functions would have prevented a theft is not enough to establish that a defendant's inadequate measures are a substantial factor in the

plaintiff's injury, no matter how inexcusable those omissions might be. The tenuous nature of Plaintiff's argument is similar to the attenuated causal chain laid out by the plaintiffs in *Sofia Reca*. In order to conclude that Plaintiff's harm could have been prevented by Crypto.com in this case, the following sequence would have needed to occur: (1) Despite Patz's evasiveness and insistence on proceeding with the transactions, Crypto.com would have had to ignore his statements and wishes and flag the transactions as suspicious;[2] (2) Crypto.com would have had to freeze the cryptocurrency assets in question and report the suspicious transactions to U.S. or foreign law enforcement; (3) U.S. or foreign law enforcement would have had to investigate the purported fraudulent activity; and (4) U.S. or foreign law enforcement would have had to seize the frozen assets and forfeit them for return to Plaintiff. Such an attenuated chain with multiple intervening events is far too remote and speculative to tie back to Crypto.com as a substantial factor, *particularly* based on Plaintiff's husband's conduct as set forth in the following section. Because these defects arise from a fundamental, incurable lack of causation rather than mere pleading deficiencies, amendment would be futile, and Plaintiff's theory of causation cannot prevail as a matter of law. *See Saelzler*, 25 Cal. 4th at 775 (explaining that where causation rests on speculation, conjecture, or inferences drawn from other interferences, the conclusion that causation cannot be established is unavoidable).

**III.     The Plaintiff's Husband and Unknown Suspects Committed Superseding Acts in the Causal Chain**

"The doctrine of superseding cause is applied where the defendant's negligence in fact substantially contributed to plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable." *Smarigisso v. Air & Liquid Sys. Corp.*, 750 F. Supp. 3d 1046, 1069 (N.D. Cal. 2024) (quoting *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830,

---

[2] Crypto.com *did* implement BSA-compliant policies and procedures, and as Plaintiff's Complaint concedes, Crypto.com also contemporaneously contacted Patz to investigate the nature of his transactions, and Patz was "evasive." *See* SAC at ¶ 83 ("Crypto.com asked Mr. Patz who he was receiving his investment advice from, i.e., if it was a professional advisor or not, and Mr. Patz told Crypto.com that the advice he was receiving was from an online 'friend' and not a professional advisor. Mr. Patz was also evasive with Crypto.com when asked about where the money was coming from or what the purpose of the transfers was [….]"

DEFENDANT FORIS DAX, INC.'S NOTICE OF MOTION;
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

837 (1996)).  Under California law, "where, subsequent to the defendant's negligent act, an independent intervening force actively operates to produce the injury, the chain of causation may be broken.  It is usually said that if the risk of injury might have been reasonably foreseen, the defendant is liable, but that if the independent intervening act is highly unusual or extraordinary, not reasonably likely to happen and hence not foreseeable, it is a superseding cause, and the defendant is not liable." *Res-Care Inc. v. Roto-Rooter Servs. Co.*, 753 F. Supp. 2d 970, 982 (N.D. Cal. 2010) (quoting 6 Wiktin, *Summary of California Law*, § 1197 (10th ed. 2005)).

In the context of superseding causes, California courts have held that in general, when a third party becomes aware of danger, or should, if he acted reasonably, be aware of it, a defendant has a right to assume that he will act reasonably and will not be held liable for the intervening act. *Premo v. Grigg*, 237 Cal. App. 2d 192, 195 (1965).  In addition, product misuse may serve as a complete defense when the misuse was so unforeseeable that it should be deemed the sole or superseding cause.  *Perez v. VAS S.p.A.*, 188 Cal. App. 4th 658, 685 (2010).  Further, a superseding cause does not have to be the act of a third party, and a person's own conduct can be the superseding cause of harm to that person.  *Moller v. County of San Bernandino*, 792 F. Supp. 3d 1038, 1049 (C.D. Cal. 2024) (citing *Kahn v. E. Side Union High Sch. Dist.*, 31 Cal. 4th 990, 1016 (Cal. 2003)).

Multiple intervening events attenuate the causal chain in this case, but the actions of Plaintiff's husband and the unknown scammers constitute superseding acts.  The cause of injury in Plaintiff's case originated independently from Crypto.com's alleged misconduct as the unknown scammers actually met Plaintiff's husband and initiated their scheme on two independent social media platforms.  SAC at ¶¶ 105-112.  Certainly, the scammers' fraudulent inducement of Plaintiff's husband to engage in purported cryptocurrency investment transactions constituted a gross misuse of Crypto.com's product.  While cryptocurrency scams may arguably be reasonably foreseeable in this day and age, Plaintiff's husband's actions upon being contacted by Crypto.com in advance of any transactions certainly were not.  Instead of acknowledging Crypto.com's obvious warnings, Plaintiff's husband was evasive and insisted on moving forward with the activity in question.   SAC at ¶¶ 185-189.  Plaintiff's husband was made aware of the

DEFENDANT FORIS DAX, INC.'S NOTICE OF MOTION;
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

16

danger of injury at this point yet acted unreasonably in pushing forward with his cryptocurrency withdrawals.  Crypto.com should not be held responsible for the negligent conduct of Plaintiff's husband himself.  Crypto.com cannot and should not be held liable for losses of customers who voluntarily choose to ignore obvious warning signs and engage in reckless conduct to their own detriment.  This type of superseding cause breaks any causal chain even assuming Crypto.com's alleged malfeasance was a substantial factor in Plaintiff's injury.

## CONCLUSION

For the reasons articulated above, Crypto.com respectfully asks the Court to dismiss the remainder of Plaintiff's Second Amended Complaint with prejudice.

DATED: April 8, 2026

**FOLEY & LARDNER LLP**
Charles Throckmorton
John Korba
Holli Gray
Kelsey Finn


/s/ Kelsey Finn
Attorneys for Defendant, Foris DAX, Inc., d/b/a Crypto.com