**FOLEY & LARDNER LLP**
Kelsey Finn (CA Bar No. 334670)
kfinn@foley.com
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
(213) 972.4500

Charles Throckmorton (*pro hac vice*)
Holli Gray (*pro hac vice*)
charles.throckmorton@foley.com
holli.gray@foley.com
2 S Biscayne Blvd, Suite 1900
Miami, FL 33131
(305) 482-8400

John Korba (*pro hac vice)*
jack.korba@foley.com
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 295-4110

*Attorneys for Defendant Foris DAX, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNG MIN LEE,<br><br>Plaintiff,<br><br>vs.<br><br>FORIS DAX, INC. d/b/a CRYPTO.COM,<br><br>Defendant. | Case No.: 3-24-cv-06194-WHO<br><br>Assigned to the Honorable William H. Orrick, Courtroom 2<br><br>**DEFENDANT FORIS DAX, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:     June 3, 2026<br>Time:    2:00 p.m.<br>Judge:   William H. Orrick<br>Place:   Courtroom 2<br>              450 Golden Gate Ave.<br>              San Francisco, CA 94102<br><br>Complaint filed: July 1, 2024<br>Removal filed: August 30, 2024<br>Second Amended Complaint filed: May 23, 2025<br>Pretrial Conference: March 29, 2027<br>Trial Date: April 26, 2027 |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

RESPONSE TO FACTUAL ASSERTIONS ...................................................................... 2

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

    I.           The Law of the Case Doctrine Does Not Bar Crypto.com's Motion. ................ 5

    *A. The Causation Issue Raised by Crypto.com Has Not Been Decided by this Court Directly or by Necessary Implication.* .................................................................... 5

    *B. Regardless, This Court Retains Discretion to Consider Crypto.com's Causation Argument.* ...................................................................................................... 7

    II.         Plaintiff Fails to Adequately Plead Causation Under the Applicable UCL Standard. ...................................................................................................................... 7

    A.    *Recent Case Law Cited by Crypto.com is Analogous to Plaintiff's Causation Claim and Also Addresses "But For" Causation* .............................................................. 8

    B.    *There is No Direct Causal Connection Between Crypto.com's Alleged BSA Non-Compliance and Plaintiff's Injury.* .................................................................... 10

    C.    *Patz's Independent and Evasive Affirmative Acts Can Qualify as a Superseding Cause.* ...................................................................................................... 11

    III.       The Opposition Inaccurately Describes the BSA's Purpose and Exaggerates Its Reach. ...................................................................................................................... 12

    IV.       Granting Plaintiff Leave to Amend Would be Futile as No Further Amendments Would Cure the Causation Deficiency. ............................................................. 15

DEFENDANT FORIS DAX, INC.'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accident Ins. Co., Inc. v. U.S. Bank Nat'l Ass'n*,
2019 WL 2566950 (D.S.C. June 21, 2019) ................................................................................ 15

*Ascon Props., Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989) .................................................................................................. 15

*Askins v. U.S. Dep't of Homeland Sec.*,
899 F.3d 1035 (9th Cir. 2018) .................................................................................................... 7

*Bhatia v. Silvergate Bank*,
725 F.Supp.3d 1079 (S.D. Cal. 2024) ........................................................................................ 9

*Body Xchange Sports Club, LLC v. Zurich Am. Ins. Co.*,
648 F. Supp. 3d 1205 (E.D. Cal. 2022) .................................................................................... 15

*Carter v. Clark Cty.*,
253 Fed. Appx. 638 (9th Cir. 2007) ........................................................................................... 4

*Cetacean Community v. Bush*,
386 F.3d 1169 (9th Cir. 2004) .................................................................................................... 6

*Choudhuri v. Specialized Loan*,
Serv., 2024 WL 2175697 (N.D. Cal. May 13, 2024) .................................................................. 4

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988) ................................................................................................................... 7

*City and Cty. of San Francisco v. Purdue Pharma L.P.*,
491 F.Supp.3d 610 (N.D. Cal. 2020) ......................................................................................... 9

*Corbett v. Pharmacare U.S., Inc.*,
544 F. Supp. 996 (S.D. Cal. 2021) ............................................................................................. 6

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1989) .................................................................................................... 4

*In re Capacitors Antitrust Litig.*,
154 F. Supp. 3d 918 (N.D. Cal. 2015) ........................................................................................ 6

*Licht v. Binance Holdings Limited,*
   No. 24-10447-NMG, 2025 WL 625303 (D. Mass. Feb. 5, 2025) ................................................ 10

*Lusk v. Kellogg,*
   2011 WL 13225140 (C.D. Cal. Aug. 10, 2011) ........................................................................ 14

*Martinez v. Vintage Petroleum, Inc.,*
   68 Cal. App. 4th 695 (1998) ...................................................................................................... 12

*Milgard Tempering, Inc. v. Selas Corp. of Am.,*
   902 F.2d 703 (9th Cir. 1990) ........................................................................................................ 7

*Navy Fed. Credit Union v. Lentz,*
   78 Va. App. 250, 890 S.E.2d 827 (2023) ................................................................................... 15

*Nia v. Bank of Am., N.A.,*
   725 F. Supp. 3d 1150 (S.D. Cal. 2024) ...................................................................................... 15

*Norton v. U.S. Bank Nat. Ass'n,*
   179 Wash. App. 450 (2014) ........................................................................................................ 15

*Oki Semiconductor Co. v. Wells Fargo Bank,*
   298 F.3d 768 (9th Cir. 2002) .................................................................................................... 8, 9

*Perez,*
   188 Cal. App. 4th ....................................................................................................................... 12

*Pub. Serv. Co. of Okla v. A Plus, Inc.,*
   2011 WL 3329181 (W.D. Okla. Aug. 2, 2011) .......................................................................... 14

*Radu v. Shon,*
   62 F.4th 1165 (9th Cir. 2024) ....................................................................................................... 7

*Reca v. Flashdot Limited,*
   No. 24-cv-6316-GHW, 2026 WL 82702 (S.D.N.Y. Jan. 12, 2026) .............................................. 9

*Regalado Cuellar v. United States,*
   553 U.S. 550 (2008) ................................................................................................................... 12

*SFS Check, LLC v. First Bank of,*
   Del., 990 F.Supp.2d 762 (E.D. Mich. 2013) .............................................................................. 14

*Special Dist. Risk Mgmt. Auth. v. Munich Reinsurance Am., Inc.,*
   562 F. Supp. 3d 989 (E.D. Cal. 2021) .......................................................................................... 4

*Thomas v. Bible*,
   983 F.2d 152 (9th Cir. 1993) ............................................................................................................ 7

*U.S. v. Lummi Nation,*
   763 F.3d. 1180 (9th Cir. 2014) ....................................................................................................... 5

*U.S. v. Park Place Assocs., Ltd.*,
   563 F.3d 907 (9th Cir. 2009) .......................................................................................................... 5

*U.S. v. Wilkes*,
   662 F.3d 524 (9th Cir. 2011) ........................................................................................................ 12

*United States v. Adefehinti*,
   510 F.3d 319 (D.C. Cir. 2007) ...................................................................................................... 12

*United States v. Seward*,
   272 F.3d 831 (7th Cir. 2001) ........................................................................................................ 12

*United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*,
   512 F.3d 555 (9th Cir. 2008) .......................................................................................................... 5

*Ventura General Agency, LLC v. Wells Fargo Bank, N.A.*,
   2019 WL 3503109 (N.D. Cal. Aug. 1, 2019) .............................................................................. 14

*Watt v. OKCoin USA Inc*,
   No. 4:25-cv-00368, 2026 WL 880154 (N.D. Cal. March 31, 2026) ............................................. 8

**Statutes**

18 U.S.C. § 1956 ............................................................................................................................... 12

18 U.S.C. § 1957 ............................................................................................................................... 12

31 U.S.C. § 5311 ............................................................................................................................... 13

**Regulations**

31 C.F.R. Parts 1010 ........................................................................................................................ 14

31 C.F.R. § 1010.410 ........................................................................................................................ 11

*Anti-Money Laundering and Countering the Financing of Terrorism Programs*,
   91 Fed. Reg.  (proposed April 10, 2026) ...................................................................................... 14

**Other Authorities**

DE 115................................................................................................................................ 2, 9

DE 125.................................................................................................................................... 5

DE 151.................................................................................................................................... 5

Rest.2d Torts, § 440 ............................................................................................................. 12

**INTRODUCTION**

This case should be dismissed. In a grasp to salvage the sole remaining claim in the case, Plaintiff's Opposition to Crypto.com's Motion for Judgment on the Pleadings (the "Opposition") blatantly ignores the operative legal standard at this stage and instead treats numerous disputed facts as conceded, notwithstanding that those facts have no true bearing on the legal causation argument set forth in Crypto.com's Motion for Judgment on the Pleadings (the "Motion"). In doing so, Plaintiff improperly attempts to convert the Motion into a motion for summary judgment, which is inappropriate at this stage. Setting this aside, the Opposition's legal arguments do not address the deficiencies in the Second Amended Complaint ("SAC") and fail to meaningfully rebut any of Crypto.com's arguments for why the SAC should be dismissed.

To begin with, the Opposition's reliance on the law of the case doctrine is misplaced and either mistakenly reads or conveniently omits key portions of both the Court's prior Orders pertaining to Crypto.com's motions to dismiss. Contrary to Plaintiff's assertions, the causation argument raised in Crypto.com's Motion has not been decided, either expressly or by necessary implication. In addition, the Court has wide discretion to revisit a question of law if warranted.

As to the causation arguments, the Opposition misses the point and analogy between the RICO proximate-cause case law and the causation standard under California's Unfair Competition Law ("UCL") as applied to this very scenario. The Opposition tellingly concedes that "but for" causation applies, yet completely glosses over key holdings in the cases cited in the Motion that analyze the "but for" causation standard in similar contexts. Plaintiff fails to plausibly allege that Crypto.com was the "but for" cause of her injuries. Instead of pointing to any concrete facts alleged in the pleadings, Plaintiff continues to offer hypothetical and speculative scenarios in which Crypto.com might have prevented the cryptocurrency transfers involving her husband Donald Patz ("Patz"), untethered to Crypto.com's actual BSA obligations (which run to the government—not to Plaintiff or Patz). The Opposition also ignores that intervening third party conduct can constitute a superseding cause that severs any causal connection between a defendant's conduct and the alleged harm.

Critically, the Opposition's arguments regarding the purpose of the BSA reflect a

DEFENDANT FORIS DAX, INC.'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

1

fundamental misunderstanding of the concept of money laundering and grossly overstate the actual obligations imposed on regulated entities like Crypto.com under the applicable scheme. Proper application of money laundering principles, BSA regulations, and FinCEN guidance further forecloses Plaintiff's causation theory in this case.

Lastly, the Court should disregard the Opposition's disputed factual allegations as not properly before the Court and deny leave to amend, as any amendment would be futile.

**RESPONSE TO FACTUAL ASSERTIONS**

Although a summary of the relevant facts is not necessary here, several of Plaintiff's assertions require correction and clarification for the record. For instance, the Opposition insinuates that Crypto.com knew of certain published "scam tags" yet ignored them and their alleged criminal association. *See* Opp. at 3. However, nowhere in the SAC does Plaintiff allege how Crypto.com purportedly knew about these supposed "scam tags." Instead, Plaintiff appears to suggest that Crypto.com must have known of these tagged wallets based on blockchain analytics systems. *See id.* But the portions of the SAC that Plaintiff cites in support relate instead to cloud infrastructure and computing network security and privacy frameworks, not the type of blockchain analytics that purportedly would have identified downstream cryptocurrency wallet exposure to fraudulent activity. *See id.;* SAC ¶¶ 47-52. None of these standards and certifications specifically relate to blockchain forensic analytics as Plaintiff now suggests. This is a disingenuous attempt to backdoor allegations of imputed knowledge against Crypto.com of a purported criminal infrastructure where no such knowledge is plausibly alleged. Indeed, this Court has already held that the SAC fails to establish that Crypto.com had "actual knowledge" of the underlying torts or that Crypto.com "must have known" of the alleged underlying scheme. *See* DE 115 at 1 ("[Plaintiff] has not shown that Crypto.com had 'actual knowledge' of the underlying torts, much less that it 'substantially assisted' in their commission."); *id.* at 5 ("The dispositive question is whether the complaint set forth allegations that, if true, would show that Crypto.com 'must have known' from the circumstances that Patz was being victimized by scammers. The answer is no.").

Plaintiff's Opposition also mischaracterizes supposed affirmative actions that Crypto.com

DEFENDANT FORIS DAX, INC.'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

2

took in connection with the transmission of Patz's funds and the initial whitelisting of the destination wallet addresses.   For example, the Opposition contends that Crypto.com affirmatively transferred funds to destination wallet addresses while ignoring its own systems. *See* Opp. at 4.  However, it is undisputed that Patz himself was the one that voluntarily and affirmatively initiated the transfers, and there is no evidence in the pleadings that Crypto.com willfully or negligently disregarded warnings from its internal systems.  Crypto.com merely provided the platform that Patz utilized to knowingly and purposefully transfer his funds, which included proactively whitelisting the destination wallets through a user-initiated process.  Plaintiff attempts to confuse the issue by asserting that whitelisting is not a default state and requires the removal of compliance safeguards.  *See id*. But that is not an accurate description of Crypto.com's practices, and it is inconsistent with Plaintiff's own allegations in the SAC that describe Crypto.com's whitelisting procedures as generally applicable to all users and not uniquely streamlined for Patz. *See* SAC ¶¶ 83-86.  Contrary to Plaintiff's inconsistent assertions, Crypto.com's whitelisting process does involve more than what the Opposition alleges, and in any event, is not a BSA-mandated process.

Finally, the Opposition mischaracterizes the purpose of Crypto.com's inquiries to Patz following certain cryptocurrency withdrawals and the information obtained during that process. Crypto.com's efforts to verify and obtain additional information were not, as the Opposition claims, aimed at demonstrating Travel Rule compliance, *see* Opp. at 4, but rather were to confirm the legitimacy of transactions that Patz intended after multiple withdrawals had already been completed.  The SAC acknowledges that Crypto.com undertook due diligence and was met with responses confirming that Patz intended to proceed with the withdrawals.  *See* SAC ¶¶ 184-192. The Opposition now argues, for the first time and without pointing to any regulatory authority, that BSA compliance would have required freezing the transfers and escalating review, in yet another attempt to cure Plaintiff's failure to adequately plead causation.  However, these new, conclusory, and hypothetical allegations fail to pass muster as they rest on the same faulty logic and misapplication of the BSA.

DEFENDANT FORIS DAX, INC.'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

3

## LEGAL STANDARD

In citing discovery disputes and pointing to facts outside of the pleadings, Plaintiff deliberately disregards the current posture of the proceedings and the appropriate legal standard. Because a Rule 12(c) motion tests the sufficiency of the operative pleadings, absent conversion to summary judgment, courts may not go "beyond the pleadings to resolve an issue." *See, e.g., Special Dist. Risk Mgmt. Auth. v. Munich Reinsurance Am., Inc.*, 562 F. Supp. 3d 989, 993–94 (E.D. Cal. 2021); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (explaining that a court may not consider matters beyond the pleadings on a Rule 12(c) motion without converting it to a motion for summary judgment). Conversion of a Rule 12 motion is improper when all parties are not given a "reasonable opportunity to present all material made pertinent" to a summary judgment motion. *See Carter v. Clark Cty.*, 253 Fed. Appx. 638, 640 (9th Cir. 2007). That standard is not met here. Fact discovery remains ongoing and has been extended through August 28, 2026, meaning that the parties have not yet had a full opportunity to develop the record. Accordingly, conversion of this Rule 12(c) Motion into one for summary judgment is inappropriate at this stage.

Rather than defend the SAC as pleaded, Plaintiff asks the Court to deny Crypto.com's Motion based on allegations she may wish to assert in the future and by recasting disputed discovery material as if it were part of the pleadings. *See* Opp. at 22 ("Discovery since the SAC has produced new evidence that decisively closes the causation theory Crypto.com now attacks."). That approach is improper. A Rule 12(c) motion does not require the Court to resolve factual disputes, weigh evidence, or credit one party's characterization of discovery; it asks only whether the operative complaint plausibly states a claim. *See Choudhuri v. Specialized Loan Serv.*, 2024 WL 2175697, at *6 (N.D. Cal. May 13, 2024) ("On a motion for judgment on the pleadings, as with a motion to dismiss, the Court will not weigh the evidence….Instead, the Court asks whether Plaintiff has pled 'factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged.'"). Allegations appearing only in a proposed amendment—particularly those premised on Plaintiff's selective account of discovery—cannot cure defects in the SAC. Nor may Plaintiff bootstrap purported discovery disputes into a basis for

denying judgment on the pleadings, especially where doing so circumvents Rule 12(c)'s limits, improperly discloses material covered under the Parties' Protective Order,[1] and misrepresents the discovery record.[2] The Court should disregard all facts not contained in the SAC and Crypto.com's Answer, and resolve the Motion solely on the pleadings.

## ARGUMENT

### I. The Law of the Case Doctrine Does Not Bar Crypto.com's Motion.

Plaintiff's reliance on this doctrine suffers from an incorrect reading of this Court's prior Orders on Crypto.com's motions to dismiss. Nonetheless, the Court retains wide discretion to revisit prior rulings assuming such exercise of discretion is necessary.

#### A. The Causation Issue Raised by Crypto.com Has Not Been Decided by this Court Directly or by Necessary Implication.

For a prior ruling to become law of the case as to a particular issue, that issue "must have been decided explicitly or by necessary implication in the previous disposition." *U.S. v. Park Place Assocs., Ltd.*, 563 F.3d 907, 925 (9th Cir. 2009). In *U.S. v. Lummi Nation*, for instance, the court held that the doctrine did not apply where no prior decision explicitly determined whether certain waters were part of the defendant's usual and accustomed grounds and stations. 763 F.3d 1180, 1187-88 (9th Cir. 2014). As the Ninth Circuit has explained, "law of the case acts as a bar only when the issue in question was actually considered and decided by the first court." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.,* 512 F.3d 555, 564 (9th Cir. 2008).

---

[1] In filing the Opposition for the first time, in violation of the Stipulated Protective Order (ECF No. 151), Plaintiff publicly disclosed material designated as confidential by Crypto.com. *See* DE 151; DE 125.

[2] For example, Plaintiff asserts that "Crypto.com has continued to refuse to produce *anything* regarding the other Crypto.com customer victims, and any BSA compliance record documents." Opp. at 2. That assertion is inaccurate and contradicted by the Opposition itself, which purports to rely on Crypto.com's confidential discovery productions. *See id.* at 24. Moreover, on May 5, 2026—one day before the Opposition was filed—Crypto.com served supplemental discovery responses and made its fourth document production. Plaintiff cannot convert a disputed and inaccurate characterization of discovery into a basis for defeating Rule 12(c).

Here, none of this Court's prior Orders addressed, either directly or by necessary implication, whether Plaintiff has adequately alleged statutory standing based on causation under the unlawful prong of the UCL.  The Opposition first contends that the Court rejected Crypto.com's causation challenge in its Order on Crypto.com's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), citing specific language from that Order.  *See* Opp. at 6-7 (citing [DE 79]). However, that holding clearly relates to the Court's determination of the prerequisite showing for Article III standing, not the distinct issue of statutory standing that is the subject of Crypto.com's Motion.  *See* DE 79 at 8-10.  Article III standing and statutory standing under the UCL are distinct legal analyses.  *See, e.g., Corbett v. Pharmacare U.S., Inc.,* 544 F. Supp. 996, 1005 (S.D. Cal. 2021) (citing *Cetacean Community v. Bush*, 386 F.3d 1169, 1174-75 (9th Cir. 2004) (noting distinction between constitutional and non-constitutional standing); *see also In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925 (N.D. Cal. 2015) ("Article III standing is different from, and not to be measured by, statutory standing.").   Indeed, the Court could not possibly have addressed the statutory standing issue presented in this Order, as the FAC did not even include a BSA-predicated UCL claim.  *See generally,* DE 63.

The Opposition's citations to the Court's Order on Crypto.com's Motion to Dismiss the SAC fare no better.  Once again, Plaintiff relies on the Court's finding regarding "constitutional and prudential standing," not the statutory standing now at issue.  *See* Opp. at 7. The Court's ruling on the newly added BSA-predicated UCL claim addressed only Crypto.com's argument concerning reliance, concluding that reliance is not required for an unlawful UCL claim predicated on a BSA violation.  *See* ECF No. 115 at 17.  The Court did not consider the distinct question of whether Plaintiff adequately alleged a causal connection between purported BSA violations and Plaintiff's injury for statutory purposes of the UCL.  The Opposition's misguided attempts to conflate Article III standing with statutory standing, and to extend the Court's rulings on separate legal issues, do not suffice to show that the issue was actually considered and decided. Because the Court has not considered whether Plaintiff has sufficiently alleged causation for purposes of statutory standing under the unlawful prong of the UCL—particularly under a BSA theory—the law of the case doctrine does not apply.

DEFENDANT FORIS DAX, INC.'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

### B. Regardless, This Court Retains Discretion to Consider Crypto.com's Causation Argument.

Even if the Court had decided this causation issue directly or by necessary implication, the Court has discretion to revisit the question under any of the following circumstances: (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; and (5) a manifest injustice would otherwise result. *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993) (citing *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)). In that sense, the law of the case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power,' and applies most clearly where the issue has been decided by a higher court. *Radu v. Shon,* 62 F.4th 1165, 1176 (9th Cir. 2024) (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988)). Importantly, the law of the case doctrine does not preclude a court from reassessing its own legal rulings in the same case. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018).

Under the case law, this Court retains wide discretion to reconsider its own rulings in this case if necessary. As the Court has not previously considered full briefing on this particular causation issue, that alone provides a sufficient basis to revisit any prior holding that could arguably be read as having been decided by reference or implication. However, should the Court look to the factors outlined in *Thomas*, the development of recent case law surrounding causation in the cryptocurrency and BSA contexts constitutes changed circumstances that warrant reconsideration. The inability of the Court to consider analogous situations presented and considered by Courts from other jurisdictions and in this jurisdiction would result in a manifest injustice, making the exercise of the Court's discretion appropriate here.

### II.    Plaintiff Fails to Adequately Plead Causation Under the Applicable UCL Standard.

The Opposition's contention that Crypto.com's causation argument fails because it applies the wrong legal standard misses the point of the logic applied in the cases cited within Crypto.com's Motion and disregards the portions of those cases that address "but for" causation. The Opposition fails to meaningfully address Crypto.com's substantial factor arguments and

DEFENDANT FORIS DAX, INC.'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

continues to rely on hypothetical, tenuous, and conclusory allegations to establish a causal connection between Crypto.com's alleged unlawful conduct and Plaintiff's injury.

### A. *Recent Case Law Cited by Crypto.com is Analogous to Plaintiff's Causation Claim and Also Addresses "But For" Causation*

At no point in Crypto.com's Motion was the argument made that proximate cause is the governing causation standard under the UCL.  Instead, the Motion cites to *Reca* and *Licht* to demonstrate that the logic underlying those decisions applies to Plaintiff's theory of causation here – namely, that Plaintiff's theory of causation requires the Court to skip steps in the causal chain in an attempt to draw a link between the platform used to transmit funds and Plaintiff's injuries, which were ultimately caused by unknown third party actors.  *See* Motion at 12.  As the Opposition acknowledges, the logic employed in *Reca* and *Licht* has recently been applied in this jurisdiction.  In *Watt v. OKCoin USA Inc.*, a case also involving a cryptocurrency exchange and laundered stolen cryptocurrency, the Court operated under the premise that "proximate cause of an injury is a substantial factor in the sequence of responsible causation."  2026 WL 880154 at *6 (N.D. Cal. March 31, 2026) (citing *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 773 (9th Cir. 2002)).  There, the court held that the proximate cause of plaintiffs' injury was the underlying theft—not the subsequent crypto laundering. *See Watt*, 2026 WL 880154 at *6.  The Opposition's attempt to reconcile this logic with the facts here is unpersuasive and inconsistent with the concept of substantial factor causation.

The Opposition's effort to differentiate these facts from those in *Licht*, *Reca*, and *Watt* relies entirely on the assertion that Crypto.com's platform was used to process the underlying transactions as opposed to the exchanges in the other cases, which were ultimately used as money laundering conduits or destinations and not the original platforms used to process the transactions.  Plaintiff's getaway driver analogy exposes the fallacy in this argument.  *See* Opp. at 12.  The getaway driver who arrives after a robbery and the driver to a robbery share the same critical element that Crypto.com lacked here: *knowledge* of the underlying crime.  Both an aider and abettor to a robbery and an accessory after the fact are required to possess knowledge of the criminal activity to face liability.  Plaintiff's attempt to distinguish *Saelzler* suffers from the same

fallacy in arguing that Crypto.com affirmatively transferred the funds to criminals. *See* Opp. at 12. Crypto.com had no such knowledge of the underlying fraud and did not "substantially assist" in its commission, as this Court has already found. *See* DE 115 at 1-2; *supra* 2 (citing same). Crypto.com instead served as a passive platform for the cryptocurrency transactions at issue. Crypto.com's actual involvement in the alleged theft was nonexistent, regardless of its provision of a platform as a conduit for the transactions, leaving Crypto.com in the same position in the causal chain as the defendants in *Oki Semiconductor, Licht*, *Reca*, and *Watt*.

The Opposition's references to *Purdue Pharma* and *Bhatia* do not solve Plaintiff's causation conundrum. The Court in *Purdue Pharma* was not presented with a question of causation for statutory standing purposes but instead addressed whether a regulatory scheme imposed legal duties on drug manufacturers and distributors such that it could serve as a UCL predicate under the unlawful prong if the regulations were violated. *See City and Cty. of San Francisco v. Purdue Pharma L.P.*, 491 F.Supp.3d 610, 685-686 (N.D. Cal. 2020). In *Bhatia*, the plaintiffs alleged that the defendants facilitated a scheme by specifically designing a network that enabled them to become the go-to-bank for more than a dozen cryptocurrency companies that ended up under investigation, shut down, fined, or in bankruptcy and were key to their growth. *Bhatia v. Silvergate Bank*, 725 F.Supp.3d 1079, 1112 (S.D. Cal. 2024). In addition, the plaintiffs alleged that the defendants were among the few banks willing to service the crypto industry and that crypto companies were getting kicked out of other banks due to significant risks that they posed. *Id.* In sum, these cases do not provide support for the arguments Plaintiff advances.

Significantly, the Opposition appears to concede that "but for" causation is the appropriate standard to apply here. *See* Opp. at 9. However, the Opposition then ignores the fact that both the *Reca* and *Licht* courts expressly considered whether "but for" causation had been adequately pled and concluded that it had not. As the Court in *Reca* explained, "absent the bad actors' theft, Plaintiffs would not have been in the position of needing to [track and] recover their cryptocurrency," so the but-for cause of the plaintiffs' injury was the bad actors' theft in the first place. *See* 2026 WL 82702, at *8 (S.D.N.Y. Jan. 12, 2026) (quoting Magistrate Judge Cave's report and recommendation at 32). The Court in *Licht* likewise rejected a similar "but for"

causation theory and noted the absence of non-conclusory non-speculative allegations in support of a plausible conclusion that the scammers' transactions in the pig butchering schemes would have been flagged as suspicious and their accounts would have been frozen and the suspicious transactions reported to FinCEN.  *See* 2025 WL 625303, at *38 (D. Mass. Feb. 5, 2025).

The same logic applies here.  Plaintiff would not be in the position of needing to recover her losses, absent the actions of the unknown scammers or her husband for that matter.  The operation of a "compliant" BSA program as alleged that would have stopped the transactions in the first place is entirely speculative and conclusory.   Crypto.com had no involvement in the scheme or knowledge of the underlying criminal nature of the transactions and certainly had no ability to freeze the scammers' accounts once the transfers were made.  There is also no plausible allegation that any reports to FinCEN would have negated Plaintiff's injury.  Finally, there is absolutely nothing to suggest the scammers would not have effectuated their scheme against Patz using any of the many other cryptocurrency exchange platforms, severely undermining Plaintiff's substantial factor and "but for" causation claims.

**B.     *There is No Direct Causal Connection Between Crypto.com's Alleged BSA Non-Compliance and Plaintiff's Injury.***

Plaintiff's attempt to redraw a direct causal connection between Crypto.com and her alleged injury is likewise not persuasive.  First, nowhere in the SAC does Plaintiff allege that a BSA-compliant Crypto.com would not have transmitted the funds in the first place because the destination wallets would have been flagged before the transmissions were authorized.  This theory emerges for the first time in the Opposition.  *See* Opp. at 18.  Regardless of the fatal timing of this allegation, it is completely speculative and conclusory and not tied to the facts.

The Opposition highlights multiple "decision points" that suggest Crypto.com's BSA compliance would have halted the transfers, *see* Opp. at 18-19, but these examples do nothing more than exemplify the speculative and tenuous nature of her argument.  For instance, Plaintiff alleges that pre-deposit wallet screening would have flagged for Crypto.com *downstream* criminal association with a destination wallet.  *See* Opp. at 18 (emphasis added).  However, Plaintiff jumps to the conclusion that Crypto.com's technology and vendor partnership would have identified the

criminal association without explaining how this would have been done, why this would have resulted in an automatic cancellation of the transaction, and perhaps most importantly, how or why that is required by the BSA.  Plaintiff's "post-scam-tag" allegation suffers from the same flaw and relies on "scam tags" of which Crypto.com is not even alleged to have been made aware. Plaintiff also points to the Travel Rule to suggest that the transactions would have been stopped, but the Travel Rule is a record collection and retention regulation that speaks to no obligation of a financial institution to block a transaction if certain information is not available.  *See* 31 C.F.R. § 1010.410.  Finally, Plaintiff's "decision point" regarding the "February 20 Whitelisting Dialogue" misconstrues the facts and underscores Plaintiff's erroneous portrayal of Crypto.com's BSA compliance obligations.  As previously articulated, Patz's responses to Crypto.com's questions confirmed the legitimacy of the transactions and indicated his willingness to proceed.  A closer look at the FinCEN guidance cited by Plaintiff shows that, even if there were certain flags consistent with some of the guidance, following that guidance would not have resulted in the termination or cancellation of the transactions "as no single red flag is determinative of illicit or other suspicious activity," and the guidance does not call for the suspension or blocking of transactions in any circumstance.  *See* FIN-2022-A002; *see also* FIN-2023-Alert005.  As such, there is no non-speculative conclusion that adherence to this guidance would have prevented the loss here.

### C.   *Patz's Independent and Evasive Affirmative Acts Can Qualify as a Superseding Cause.*

Curiously, the Opposition takes issue with Crypto.com's characterization of Patz as "evasive," *see, e.g.,* Opp. at 21, but Plaintiff's own SAC expressly claims that Patz was "evasive with Crypto.com when asked about where the money was coming from or what the purpose of the transfers was."  *See* SAC ¶ 188.  Further, Plaintiff's depiction of Patz as the victim in this scenario does not comport with the fact that Plaintiff, not Patz, filed the SAC and she alleges that she, not Patz, suffered injury caused by Crypto.com.  For legal causation purposes, Patz is a third party to this cause of action, and the superseding act of a third person "which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a

substantial factor in bringing about" is a well-established principle under California law. *Perez v. VAS S.p.A.*, 188 Cal. App. 4th 658, 680 (2010) (citing Rest.2d Torts, § 440). Such a principle would not effectively immunize financial institutions, as it requires the intervening act to have produced harm of a kind and degree that would be unforeseeable to the original tortfeasor. *Perez,* 188 Cal. App. 4th at 681. Gross or extraordinary negligence on the part of a third party will act as a superseding cause. *Martinez v. Vintage Petroleum, Inc.*, 68 Cal. App. 4th 695, 701 (1998).

Here, Patz's gross negligence superseded any harm attributed to Crypto.com. Patz's reliance on investment advice from someone whom he had never met and his evasive behavior in the face of due diligence questions were not foreseeable to Crypto.com. Nor was Patz's refusal to completely and accurately respond to clear warning signs presented to him. Crypto.com could not have reasonably foreseen much less prevented Patz's extraordinary negligence in continuing to participate in the investment scheme despite Crypto.com's due diligence intervention.

### III.     The Opposition Inaccurately Describes the BSA's Purpose and Exaggerates Its Reach.

The Opposition's incorrect application of the BSA suffers from a fundamental misunderstanding of the concept of money laundering. Money laundering, by its nature, is a crime that is derived from separate and distinct criminal conduct in the first instance. The federal money laundering statute, 18 U.S.C. § 1956, "prohibits specified transfers of money derived from unlawful activities." *U.S. v. Wilkes*, 662 F.3d 524, 545 (9th Cir. 2011) (quoting *Regalado Cuellar v. United States*, 553 U.S. 550, 556 (2008)). The money laundering statutes criminalize behavior that masks the relationship between an individual and his illegally obtained proceeds. *Wilkes*, 662 F.3d at 545 (citing *United States v. Adefehinti*, 510 F.3d 319, 322 (D.C. Cir. 2007)). "[T]ransactions that created the criminally-derived proceeds must be distinct from the money-laundering transaction…" *Wilkes*, 662 F.3d at 545 (quoting *United States v. Seward*, 272 F.3d 831, 836 (7th Cir. 2001)). This distinction is exemplified by the requirements of 18 U.S.C. § 1956 and 18 U.S.C. § 1957 that transactions involve, promote, or are otherwise derived from "specified unlawful activity." The definition of "specified unlawful activity" for purposes of the federal money laundering statutes includes an enumerated list of separate and distinct crimes to

DEFENDANT FORIS DAX, INC.'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:24-cv-06194-WHO

include violent offenses, firearms-related offenses, and drug-trafficking, among other offenses.

Plaintiff's theory would turn the concept of money laundering on its head and remove any causal relationship between criminal activity in the first instance and the laundering of funds meant to promote or disguise the nature of that criminal activity.  Simply put, for there to be money laundering, there needs to be some criminal activity the laundering seeks to promote or conceal, which Plaintiff either does not recognize or willfully ignores.  Plaintiff instead jumps ahead in the money laundering causal chain and would read the BSA as designed to prevent every type of specified unlawful activity statutorily defined, which it clearly is not.  The Opposition's citations to the BSA's statutory and regulatory definitions do not advance her argument, as they merely reiterate that the BSA is meant to prevent **money laundering** and Anti-Money Laundering programs are designed to prevent money service businesses from being used to facilitate **money laundering**, not other specified unlawful activity.  Plaintiff's selective citations to "preventing," "combating," and "fraud risks" are also misleading, as those are all either used in the context of money laundering or assessing risks posed to financial institutions.  *See* 31 U.S.C. § 5311.

Plaintiff's citations to *Western Union* and *MoneyGram* are also misleading.  As explained in the Deferred Prosecution Agreements ("DPA") entered into by *The Western Union Co.* in *United States v. The Western Union Co.*, No. 1:17-cr-00011-CCC (M.D. Pa. Jan. 19, 2017), certain employees of Western Union locations were complicit in a scheme to defraud customers, and Western Union aided and abetted the fraudsters' scheme by failing to suspend and/or terminate the complicit employees.  (DPA, Statement of Facts ¶ 21 (ECF No. 3-1)).  In that case, Western Union's AML deficiencies centered around these complicit employees and a failure to file SARs identifying this activity.  *Id.* at ¶¶ 55-99.  Likewise, the DPA entered into in *United States v. MoneyGram Int'l, Inc.*, No. 1:12-cr-00291-CCC (M.D. Pa. Nov. 9, 2012), describes a scheme where MoneyGram knew that specific agents were involved in a fraud scheme that relied on false promises or representations to induce members of the public to send money under false pretenses.  (DPA, Statement of Facts ¶ 10 (ECF No. 34-2)).  Once again, the AML failures largely centered around the failure to implement policies and procedures governing the termination of these complicit employees, and the failure to file SARs and conduct due diligence related to this

fraudulent scheme. *Id.* at ¶ 31. These cases are far cries from the scenario presented here and hinged on the underlying fraud perpetrated by the Western Union and MoneyGram employees.

Finally, Plaintiff's exceedingly overbroad statement that Crypto.com has an affirmative duty to identify, investigate, and stop every transaction being used to "promote or support unlawful activity" is patently wrong, contrary to FinCEN guidance, and practically impossible. Under Plaintiff's proposed duty of care, a financial institution would be liable to every customer who loses money through a fraudulent or otherwise unlawful scheme no matter how robust and compliant that institution's AML program might be. That simply cannot be the case. Indeed, in a recently proposed rule issued by FinCEN to reform the requirements of financial institutions' anti-money laundering programs, FinCEN acknowledges that, as a practical matter, it is not possible for a financial institution to detect and report all potentially illicit transactions that flow through the institution. *See* Anti-Money Laundering and Countering the Financing of Terrorism Programs, 91 Fed. Reg. 18712 (proposed April 10, 2026) (to be codified at 31 C.F.R. Parts 1010, et al.). FinCEN as the regulatory agency recognizes the limitations of effective AML programs that Plaintiff does not, and this Court should refrain from adopting Plaintiff's expansive view of the BSA, which even FinCEN does not maintain. After all, the purpose of BSA-established AML programs is to assist the government, and there is no duty of care owed to customers arising out of the BSA's monitoring requirements. *See, e.g., Ventura General Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *6-7 (N.D. Cal. Aug. 1, 2019) (citing *Lusk v. Kellogg*, 2011 WL 13225140, at *6 (C.D. Cal. Aug. 10, 2011) (where plaintiff argued he was "not asserting a private right of action under the Bank Secrecy Act, but rather is using ongoing violations of federal law as negligence," the court dismissed the claim with prejudice, finding "[t]he Bank Secrecy Act creates neither a private right nor any parallel duty to a bank customer."); *SFS Check, LLC v. First Bank of Del.*, 990 F.Supp.2d 762, 775 (E.D. Mich. 2013), *aff'd*, 774 F.3d 351 (6th Cir. 2014) (As the BSA does not create a private right of action, it also "does not provide a basis for imposing a duty of care owed by [the bank] to Plaintiff."); *Pub. Serv. Co. of Okla v. A Plus, Inc.*, 2011 WL 3329181, at *8 (W.D. Okla. Aug. 2, 2011) ("Courts have repeatedly rejected negligence claims based on a bank's duty arising under the [Bank Secrecy] Act, concluding a

bank's duty created by the Act is owed only to the government and not to private parties.").

### IV.    Granting Plaintiff Leave to Amend Would be Futile as No Further Amendments Would Cure the Causation Deficiency.

Plaintiff's fallback request for leave to file a Third Amended Complaint should be denied. Dismissal without leave to amend is appropriate where "it is clear that 'the complaint could not be saved by any amendment.'" *See Body Xchange Sports Club, LLC v. Zurich Am. Ins. Co.*, 648 F. Supp. 3d 1205, 1221 (E.D. Cal. 2022); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (holding that "leave need not be granted where the amendment…constitutes an exercise in futility."). The Opposition's proposed amendments concern alleged internal AML materials, compliance procedures, and post hoc account reviews. But even if those matters were adequately alleged, they would still not plausibly establish that any BSA deficiency caused Plaintiff's loss, as opposed to the independent acts of unknown fraudsters and Patz's own conduct.

The legal framework surrounding the BSA further illustrates this point. "The duties created by the BSA are those owed by a bank only to the federal government, not to any private party, including bank customers." *Navy Fed. Credit Union v. Lentz*, 78 Va. App. 250, 256, 890 S.E.2d 827, 830 (2023); *see also, e.g., Nia v. Bank of Am., N.A.*, 725 F. Supp. 3d 1150, 1175 (S.D. Cal. 2024) (explaining that while the BSA requires ongoing customer due diligence, it does not mandate the frequency or content of customer-information updates); *Accident Ins. Co., Inc. v. U.S. Bank Nat'l Ass'n*, 2019 WL 2566950, at *4 (D.S.C. June 21, 2019) (Institutions retain "flexibility in the way they design the training program" to comply with the BSA); *Norton v. U.S. Bank Nat. Ass'n*, 179 Wash. App. 450, 454 (2014) (describing the BSA as a government-facing reporting regime that prohibits notice to persons involved in suspicious transactions and recognizing that an institution's internal detection and investigation systems are intertwined with obligations owed to the ***government***).

Therefore, even taking Plaintiff's proposed new allegations as true, they still do not plausibly establish that any such alleged compliance shortcomings caused Plaintiff's injury. Because Plaintiff's proposed amendments do not cure the causation defect, amendment would be futile and leave should be denied.

DATED: May 20, 2026

**FOLEY & LARDNER LLP**
Charles Throckmorton
John Korba
Holli Gray
Kelsey C Finn

*/s/ Kelsey Finn*
Attorneys for Defendant, Foris DAX, Inc., d/b/a Crypto.com